IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PREMIER COMMUNITY BANK,

          Plaintiff,                   3:14-cv-00913-PK

v.                                  OPINION AND ORDER

FIRST AMERICAN TITLE
INSURANCE COMPANY,

          Defendant.

PAPAK, Magistrate Judge:

     Plaintiff Premier Community Bank ("the Bank") brings this action against defendant First

American Title Insurance Company ("First American"), arising out of the alleged breach of a title

insurance policy. Now before the court is First American's motion to transfer venue to the

Western District of Washington (#16). For the reasons set forth below, the motion is granted.[1]

---

[1] "A motion to transfer venue is a non-dispositive matter falling within the province of a
United States Magistrate Judge." *Penguin Grp. (USA) Inc. v. Am. Buddha*, No. 3:13-cv-00497-
HU, 2013 WL 6385916, at *1 n.1 (D. Or. Dec. 6, 2013); *see also Pavao v. Unifund CCR
Partners*, 934 F. Supp. 2d 1238, 1241 n.1 (S.D. Cal. 2013) (citing cases).

## FACTUAL BACKGROUND[2]

Premier Community Bank is an Oregon chartered bank and was formerly known as Columbia Community Bank. Amended Complaint, #5, ¶ 1. First American is a California corporation doing business in Oregon and Washington. *Id.* ¶ 2. First American is the successor by merger to Pacific Northwest Title Company ("Pacific Title"), a Washington corporation. *Id.*

In 2004, Newman Park, LLC ("Newman Park"), a Washington limited liability company, purchased real property in Thurston County, Washington. *Columbia Community Bank v. Newman Park, LLC*, 304 P.3d 472, 473-74 (Wash. 2013) (en banc); Ex. 1, Declaration of Jerry Kindinger ("Kindinger Decl."), #18-1, at 2. Newman Park is a development company owned by twelve members, including Landmark Development Ventures, a company owned by Joseph Sturtevant. *Columbia Community Bank*, 304 P.3d at 473-74. Newman Park purchased the Thurston County property using a $400,000 loan from Hometown National Bank ("HNB"). *Id.* at 474. In 2008, Sturtevant sought a loan from the Bank for a different company that he owned, Trinity ("the Trinity loan"). *Id.* Unbeknownst to the other members of Newman Park, Sturtevant used the Thurston County property as collateral for the Trinity loan. *Id.* The Bank was aware of HNB's interest in the property and, thus, as a condition of the Trinity loan, the Bank required that Sturtevant use $400,000 of the loan to pay off HNB. *Id.* In approximately February 2008, Landmark Development Ventures executed a deed of trust encumbering the Thurston County property and naming the Bank as the beneficiary. *Id.*; *see also* Ex. 1, Kindinger Decl., #18-1, at 2. In connection with this transaction, the Bank sought a title insurance policy from Pacific Title,

---

[2] The Supreme Court of Washington outlined most of the relevant facts in *Columbia Community Bank v. Newman Park, LLC*, 304 P.3d 472 (Wash. 2013) (en banc). The parties do not dispute the facts.

insuring against "loss or damage stemming from the invalidity or unenforceability of [the Bank's] deed of trust lien." Amended Complaint, #5, ¶ 4; *see also* Ex. 1, Kindinger Decl., #18-1, at 1. The policy was issued out of Thurston County Title in Olympia, Washington. *See* Ex. 1, Kindinger Decl., #18-1, at 1.

Thereafter, Sturtevant's company, Trinity, defaulted on the loan and the Bank tried to foreclose on the Thurston County property. *Columbia Community Bank*, 304 P.3d at 474. The other members of Newman Park objected and sought to prevent the foreclosure. *Id.* A series of lawsuits were then filed in the Washington state courts. *Id.* The Bank tendered the lawsuit to Pacific Title, which retained Thomas Peterson, a Seattle attorney, to represent the Bank. Ex. 3, Kindinger Decl., #18-3, at 1-2; *see also* First American's Memo. in Support of Motion to Transfer Venue, #17, at 2. Ultimately, the Thurston County Superior Court found that the Bank's deed of trust was invalid, as Landmark Development Ventures lacked a sufficient membership interest to sign a deed of trust on behalf of Newman Park. *Columbia Community Bank*, 304 P.3d at 474. The trial court, however, found that, "because [the Bank] had paid off the $400,000 loan from HNB to ensure a priority position for its security interest, [the Bank] was equitably subrogated to HNB's position and acquired an equitable lien on the . . . property in the amount of the $400,000 loan from HNB." *Id.* at 474-75. The case ultimately made its way to the Supreme Court of Washington, which affirmed the trial court's conclusion that the Bank was equitably subrogated to HNB's position. *Id.* at 475.

## PROCEDURAL BACKGROUND

The Bank filed the instant action on June 6, 2014, pleading claims for negligent misrepresentation, negligence, and breach of contract. The Bank seeks damages based on the

Page 3 - OPINION AND ORDER

diminution in value of the Thurston County property. On July 25, 2014, First American filed a

motion to transfer venue to the Western District of Washington. *See* First American's Motion to

Transfer Venue, #16. On August 12, 2014, the Bank filed a resistance. *See* Bank's Resistance,

#20. First American filed a reply brief on August 22, 2014. *See* First American's Reply, #21.

On September 4, 2014, the court heard oral argument on the motion. The matter is fully

submitted and ready for decision.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought or

to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When

deciding a motion under 28 U.S.C. § 1404(a), a district court must engage in a two-step inquiry.

*See id.*; *Safe Drain Inc. v. Vito*, No. C-14-01867 DMR, 2014 WL 4088147, at \*2 (N.D. Cal. Aug.

19, 2014). First, the district court must consider whether the action could have been brought in

the proposed forum; that is, whether the proposed forum "would have had subject matter

jurisdiction at the time the action was filed; [whether] defendants would have been subject to

personal jurisdiction; and [whether] venue would have been proper." *E. & J. Gallo Winery v. F.*

*& P. S.p.A.*, 899 F. Supp. 465, 466 (E. D. Cal. 1994).

If the district court concludes that the action could have been brought in the proposed

forum, it must then consider whether the convenience of the parties, the convenience of the

witnesses, and the interest of justice weigh in favor of transferring venue to that forum. This step

of the inquiry requires an "individualized, case-by-case consideration of convenience and

fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart*

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Factors bearing on this decision include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contracts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. The district court may also consider "the local interest in the controversy and the relative court congestion and time to trial in each forum." *Safe Drain*, 2014 WL 4088147, at *3 (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)).

The burden is on the defendant to establish that the balance of the factors supports transferring venue, as there is a strong presumption in favor of the plaintiff's chosen forum. *See, e.g., id.*; *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded plaintiff's choice of forum . . . ."); *Edwards v. Depuy Synthes Sales, Inc.*, No. C 13-6006 CW, 2014 WL 2194798, at *2 (N.D. Cal. May 22, 2014) ("As a general rule, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer."). The district court has great discretion in deciding whether the relevant factors warrant transfer of the action to another forum. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988) ("'Weighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.'" (quoting *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979))).

## DISCUSSION

In the motion to transfer venue, First American contends that the court should transfer

this case to the Western District of Washington. First American argues that transfer is proper

because this case could have been brought in the Western District of Washington and the

Western District of Washington is a more convenient and logical venue, as all of the events

underlying this action occurred in Washington. The Bank does not dispute that this action could

have been brought in the Western District of Washington. Rather, the Bank argues only that First

American has not carried its burden of establishing that the convenience of the parties, the

convenience of the witnesses, and the interest of justice weigh in favor of transferring the case to

the Western District of Washington.

     After considering all of the relevant factors, including the presumption in favor of the

Bank's chosen forum, the respective parties' contacts with Washington, where the claims arose,

the convenience of witnesses and ease of access to sources of proof, the law governing the action,

the relation of the community to the action, and the relative court congestion, I find that this case

should be transferred to the Western District of Washington.

### A.    Bank's Chosen Forum

     First, as noted above, ordinarily there is a strong presumption in favor of a plaintiff's

chosen forum. *See, e.g.*, *Safe Drain*, 2014 WL 4088147, at \*3. This factor is accorded less

weight, however, "[i]f the operative facts have not occurred within the forum of original selection

and that forum has no particular interest in the parties or the subject matter." *Id.* (quoting *Pacific

Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)) (internal quotation mark

omitted). In this case, the Bank argues that its chosen forum should be given great weight

because it is an Oregon chartered bank and the damage stemming from First American's alleged

wrongdoing "was realized in Oregon." Bank's Resistance, #20, at 3. First American argues that

Page 6 - OPINION AND ORDER

this factor should be given minimal consideration, as all of the relevant facts occurred in Washington.

I agree with First American. This case arises out of a title insurance policy issued in the Western District of Washington. The title insurance policy insured against loss or damage stemming from the invalidity or unenforceability of the Bank's deed of trust on property located in the Western District of Washington. A Washington state court ultimately concluded that the Bank's deed of trust was invalid but that the Bank had an equitable lien on the property. Thus, all of the events underlying this action occurred in the Western District of Washington. While I recognize that a plaintiff's chosen forum is generally given significant weight, I find that, under the circumstances present here, this factor weighs only minimally against transfer.

###    B.    Parties' Contacts with Forum

Second, First American argues that the parties' contacts with Washington warrant transferring the case to the Western District of Washington. First American notes that, although both parties do business in Oregon, "the specific transactions at issue in this case, as well as the related core facts underlying the loan transaction, all occurred in Washington." First American's Memo. in Support of Motion to Transfer, #17, at 8. For instance, the title insurance was issued out of Thurston County Title in Olympia, Washington, and the Bank litigated its interest in the Thurston County property in the Washington state courts. The Bank does not dispute that these events occurred in Washington. Accordingly, I find that this factor weighs in favor of transferring the case to the Western District of Washington.

###    C.    Where Claims Arose

Third, First American argues that Ninth Circuit law favors resolving disputes in the forum

Page 7 - OPINION AND ORDER

in which the claim arose and that a contract claim arises in the place of intended performance.
*See* First American's Reply, #21, at 4 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805
F.2d 834, 842 (9th Cir. 1986)). Here, First American contends that the Bank's breach-of-contract
claim arose in the Western District of Washington, as the subject of the contract, the Thurston
County property, is located there. At oral argument, the Bank argued that the place of intended
performance was Oregon, as that is where the Bank, the insured, is located.

In *Decker Coal Co.*, the Ninth Circuit held that a breach-of-contract claim arises in "the
place of intended performance . . . because the place of performance is determined at the
inception of the contract and therefore the parties can anticipate where they may be sued" and,
moreover, "the place of performance is likely to have a close nexus to the underlying events."
*Decker Coal Co.*, 805 F.2d at 842. Here, First American persuasively argues that the Bank's
breach-of-contract claim arose in the Western District of Washington. The contract at issue
required First American to insure against loss or damage stemming from the invalidity of a title
to property located in the Western District of Washington. Thus, although the Bank may be an
Oregon domiciled bank, it sought First American's services, such as performing a title search and
agreeing to defend against challenges to the title, for a Washington property. Accordingly, I
agree with First American that the Bank's breach-of-contract claim arose in the Western District
of Washington, and, therefore, I find that this factor weighs in favor of transfer.

**D.    Convenience of Witnesses and Ease of Access to Sources of Proof**

Fourth, First American contends that the convenience of witnesses weighs in favor of
transferring the case. First American notes that "all of the witnesses other than employees of the
Bank reside in Washington," including title officers and other individuals involved in issuing the

Page 8 - OPINION AND ORDER

subject policy, the ultimate purchaser of the property, and Thomas Peterson, the Seattle attorney

who represented the Bank in the Washington state court litigation.  First American's Memo. in

Support of Motion to Transfer, #17, at 7-8 (footnote omitted).  First American further contends

that at least some of these witnesses "are beyond the geographical reach of this Court."  *Id.* at 7.

Moreover, First American notes that the subject property is located in the Western District of

Washington and that access to this property will be necessary for valuation and other purposes.

In response, the Bank first notes that many of its witnesses reside in the Portland metropolitan

area.  Moreover, the Bank argues that "[t]his is a focused case which will be based purely on

contract interpretation and evidence related to the diminution of the value of the property."

Bank's Resistance, #20, at 5.  Thus, the Bank contends that the location of the property is not

decisive, as there will be no need for the jury to visit the property and testimony regarding

valuation of the property will come from experts.

     Given the information provided to the court, I find that this factor weighs only slightly in

favor of transfer.  While the Bank suggests that many of its witnesses reside in the Portland

metropolitan area, it fails to identify any witness by name or indicate the substance of any

witness's testimony.  Likewise, while First American notes that the ultimate purchaser of the

property is a Washington limited liability company and that the managers of this company reside

in Olympia, Washington, First American does not indicate the substance of these potential

witnesses' testimony or why their testimony is necessary to First American's defense.  Moreover,

although First American notes that title officers and other individuals involved in issuing the

insurance policy are potential witnesses, particularly for the Bank's negligent-misrepresentation

claim, First American fails to identify these witnesses by name or indicate where they live.  First

Page 9 - OPINION AND ORDER

American does identify one witness by name—Thomas Peterson, the Seattle attorney who represented the Bank in the Washington state court lawsuits. First American notes that Peterson's testimony is relevant to the issue of whether Pacific Title "failed to cure the defective deed of trust lien in a reasonably timely manner." First American's Memo. in Support of Motion to Transfer, #17, at 8. Given that First American has identified only one witness whose convenience would be served by transfer of this case to the Western District of Washington, I find that this factor weighs only minimally in favor of transfer.

The location of other sources of proof is not particularly significant in this case. As the Bank notes, this is not a case in which the jury will likely need to visit the property at issue. Although First American contends that it will need to access the property for valuation purposes, this will likely be done by an expert. Finally, to the extent either party suggests that the location of documentary evidence is significant, this consideration is generally accorded little weight "given that advances in technology have made it easy for documents to be transferred to different locations." *Welenco, Inc. v. Corbell*, Civ. No. S-13-0287 KJM CKD, 2014 WL 130526, at *8 (E.D. Cal. Jan. 14, 2014) (quoting *Metz v. U.S. Life. Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009)) (internal quotation mark omitted). Thus, consistent with the foregoing, I find that the convenience of witnesses and the ease of access to sources of proof weigh only slightly in favor of transferring this case to the Western District of Washington.

### E.    Law Governing Action

Fifth, First American argues that Washington law will govern this action and that the Western District of Washington is in a better position to interpret and apply Washington law. The Bank responds that it is "unsettled" whether Washington law will apply and, in any case,

Page 10 - OPINION AND ORDER

First American "has identified no areas of law in which Oregon and Washington differ which will be relevant in this litigation." Bank's Resistance, #20, at 6.

I find First American's argument to be persuasive. Although the Bank argues that it is not yet clear whether Washington law governs this case, the Bank offers no argument as to why Oregon law would apply.[3] In light of First American's arguments in its reply brief, I find that it is likely that Washington law will apply. Because a federal district court in Washington is more familiar with Washington law, this factor weighs in favor of transfer.

### F.     Relation of the Community to the Action

Sixth, First American argues that jurors in the Western District of Washington will be more familiar with the area where the property is located and that these jurors will be more familiar with the "general local real estate market conditions during the relevant time period." First American's Memo. in Support of Motion to Transfer, #17, at 10. The Bank does not respond to this argument. I find that this factor is neutral. Although this case involves property located in Thurston County and the alleged damages arise from diminution of the value of that property, there is no evidence to suggest that a jury in the Western District of Washington would be better able to decide what is in essence a contract dispute between an Oregon chartered bank and a California title insurance company.

### G.     Relative Court Congestion

Finally, the Bank argues that recent data shows that the District of Oregon has fewer cases per judge than the Western District of Washington and, thus, this factor weighs against

---

[3] Indeed, at oral argument, plaintiff's counsel seemingly conceded that Washington law will govern.

Page 11 - OPINION AND ORDER

transfer. "Administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1134 (C.D. Cal. 2009) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984)). Accordingly, while I take note of the Federal Court Management Statistics report that the Bank cites, I find that this factor weighs only slightly against transfer.

**H.    Summary**

Having weighed the relevant considerations, I find that this case should be transferred to the Western District of Washington. While a plaintiff's choice of forum should rarely be disturbed, all of the operative facts in this case occurred in the Western District of Washington and Washington law will likely govern this dispute. Thus, consistent with my findings above, I find it appropriate to transfer this case to the Western District of Washington.

**CONCLUSION**

For the reasons set forth above, First American's motion to transfer venue to the Western District of Washington (#16) is granted.

Dated this 25th day of September, 2014.

Honorable Paul Papak
United States Magistrate Judge